**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **: CRIMINAL NO.  17-645-1** |
| | **:** |
| **vs.** | **:** |
| | **:** |
| **JAMES WILLIAMS** | **: HON. GENE E.K. PRATTER** |

**REPY OF DEFENDANT JAMES WILLIAMS TO GOVERNMENT'S RESPONSE
TO DEFENDANT'S MOTION TO SUPPRESS ALL PHYSICAL EVIDENCE
SEIZED FROM HIS CAR AFTER HIS ARRREST, HIS STATEMENT GIVEN
AFTER HIS ARREST AND HIS CELL PHONE RECORDS OBTAINED AFTER
HIS ARREST**

**I.     FACTS**

Presently before the Court is the Motion of Defendant to Suppress his warrantless

arrest and all fruits derived there from.  The facts alleged by the Government are set forth

in the Government's Response to Defendant's Motion.  Even accepting the facts alleged

by the Government as true,[1] under the totality of the circumstances, the facts were

insufficient to establish probable cause for the warrantless arrest of Defendant and

therefore, all fruits of Defendant's arrest must be suppressed.

**II.     ARGUMENT**

**A.     There was No Probable Cause for Defendant's Warrantless Arrest**

The Fourth Amendment protects "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."   U.S.

Const. amend. IV. The warrantless arrest of Defendant required probable cause to believe

---

[1] The facts have yet to be established and the Government bears the burden of proof at the
Motion to Suppress hearing to establish facts that are sufficient to establish probable cause for
arrest.

that Defendant had committed a felony.

A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004), citing, *United States* v. *Watson*, 423 U. S. 411, 417-424 (1976); *Brinegar* v. *United States*, 338 U. S. 160, 175-176 (1949). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland v. Pringle*, 540 U.S. 366, (2003).

To determine whether an officer had probable cause to make an arrest, a court must examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. *Maryland v. Pringle*, 540 U.S. 366, (2003), citing *Ornelas* v. *United States,* 517 U.S. 690, 696 (1996).

Viewing the facts available to the Bensalem Township Police Department (BTPD) officers at the time of Defendant's arrest, through the eyes of a reasonably objective officer, the totality of the circumstances do not amount to probable cause to arrest Defendant. Consequently, the warrantless arrest of Defendant was in violation of his Fourth Amendment rights.

Prior to Defendant's arrest, the CI identified the Co-Defendant to the BTPD as the sole participant of the controlled buy.  The CI did not provide any evidence regarding Defendant to the BTPD and the BTPD did not have any independent evidence regarding Defendant.

2

The Government's basis for probable cause to arrest Defendant hinges almost entirely on the fact at Defendant drove a vehicle occupied by the Co-Defendant who had previously arranged to sell drugs to the CI and that Defendant drove the vehicle in the parking lot before parking the vehicle in a manner that was, in the opinion of law enforcement, indicative of counter-surveillance.

The Government also points to the fact that the Co-Defendant stated that "her ride" was uncomfortable coming to Bensalem as a factor in determining probable cause. Reliance on the Co-Defendant's statement is objectively unreasonable. Even assuming that the officers could rely on the word of the CI that the Co-Defendant actually made that statement, there is absolutely no information regarding the "ride" and whether the ride was male or female.

There is no evidence to show that the "ride" that the Co-Defendant stated was "uncomfortable" coming to Bensalem is even the "ride" that showed up.  In other words, when the Co-Defendant made that statement, she may have intended one driver but later changed her mind and found another driver. It is unreasonable for BTPD officers to assume that the "ride" that showed up (i.e Defendant) was the person that Co-Defendant stated was "uncomfortable" coming to Bensalem.

Moreover, even assuming the "ride" referred to by the Co-Defendant was in fact the "ride" that showed up (i.e. the Defendant), the fact that the Co-Defendant stated to the CI that her "ride" was "uncomfortable" coming Bensalem does not provide a reasonable basis for the BTPD officers to assume that the driver was concerned about coming to Bensalem to complete a drug transaction.  The Co-Defendant did not give a reason as to

3

why her ride was uncomfortable coming to Bensalem.  There is no evidence from which the officers could reasonably assume that the "driver" was actually concerned, let alone concerned about things because he knew he was participating in a drug transaction. The Co-Defendant could simply have been making that information up for her on benefit to move the transaction to a different location.  And, even assuming that the "ride" made such a statement, there is no indication as to why he made it.  Again, there is no information from which to reasonably conclude that the "ride" knew he was driving the Co-Defendant so that she could engage in an illegal transaction.  The "ride" may have been "uncomfortable" going to Bensalem because of traffic, or any one of a number of innocent reasons.

The Government does not allege that the CI had any telephone conversations with Defendant. The Government does not allege that the CI exchanged text messages with Defendant or with a cell phone associated with Defendant.

The Government does not allege that, prior to Defendant's arrest, that the CI advised BTPD officers that the Defendant handed drugs to the CI.  The Government does not allege that, prior to Defendant's arrest, that the CI advised BTPD officers that Defendant accepted money for drugs from the CI.  The Government does not allege, that prior to Defendant's arrest, that the CI advised BTPD officers that he saw Defendant in possession of drugs.

The Government's alleged probable cause to arrest Defendant boils down to not much more than his mere presence in a car in which a prearranged drug transaction between his passenger and a CI took place.  *"Any inference that everyone on the scene of*

a crime is a party to it must disappear if the Government informer singles out the guilty person." *United States v. Di Re*, 332 U.S. 581, 594 (1948).   That is exactly the case here. All the evidence before the car appeared in the parking lot pointed solely to the Co-Defendant.   There was no more probable cause to arrest the Defendant than there was probable cause to arrest the Co-Defendant's eight (8) year old son who occupied the back seat.

"[A] search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to … seize another … where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).  *See Rakas v. Illinois,* 439 U.S. 128, 138-143, 149 (1978); *Katz v. United States,* 389 U.S. 347, 351-352 (1967).

Here, there was no probable cause specific to Defendant.  The BTPD cannot justify the arrest of Defendant because there was probable cause to arrest the Co-Defendant, with whom the CI had prearranged a drug transaction.

**B.     The Search of Defendant's Vehicle Was Not Justified by the Automobile Exception.**

A warrantless search of an automobile is justified if there is probable cause to believe that it contains contraband.  See *Chambers v. Maroney*, 399 U.S. 42, 52(1970). For the reasons stated above, there was no probable cause to believe that there was evidence of a crime in Defendant's vehicle. As stated above, all the evidence of criminal activity pointed toward the Co-Defendant. The Co-Defendant alone set up the controlled

buy with the CI and there was absolutely no reasonably objective evidence that the "extra" drugs would be in Defendant's vehicle.  The more reasonably objective assumption would have been that the extra drugs would have been on the Co-Defendant's person.

> **C.    The Admissibility of the Evidence Cannot be Justified by the Inevitable Discovery Doctrine**

The Government argues that, even if the warrantless arrest of Defendant and search of his car were invalid, the evidence recovered from Defendant's car need not be suppressed due to the inevitable discovery doctrine.  The Government argues that the evidence in Defendant's car would have inevitably been discovery through a lawful inventory search.

In determining whether the inventory search was legal, the initial inquiry is whether the "impoundment of the vehicle was itself an unlawful seizure. " *United States v. Frank*, 864 F.2d 992, 1001 (3d. Cir. 1988).    The Government cannot justify the search of the vehicle through the inventory exception because the vehicle was not lawfully in police custody.  For the reasons stated in B *supra*, there was no probable cause to believe that Defendant's vehicle contained contraband, therefore there was no lawful impoundment of the vehicle.  The vehicle having been improperly seized there can be no valid inventory search.

 Even assuming the vehicle was properly seized, the evidence produced by the inventory search must be suppressed because the police did not follow their own BTPD protocol with respect to the inventory of the vehicle.   The contents of vehicles taken into police custody may be inventoried without a warrant, probable cause or reasonable

suspicion.  The inventory search is justified by to 1) protect the owners's property, 2) protect the police against claims of lost or stolen and property and 3) protection of the police from danger.  *South Dakota v. Opperman*, 428 U.S. 364 (1976).  However, in order to be vailid an "inventory must be "conducted according to standardized criteria and established routine." *Colora v. Bertine*,  479 U.S. 367, 374, n. 6 (1987).

"The underlying rationale for allowing for an inventory exception to the Fourth Amendment warrant rule is that police officers are not vested with discretion to determine the scope of an inventory search. This absence of discretion ensures that inventory searches will not be used as a purposeful and general means of discovering of evidence of crime.  Thus it is permissible for police officers to open closed containers in an inventory search only if they are following standard police procedures that mandate the opening of such containers in every impounded vehicle." *Colora v. Bertine*,  479 U.S. 367, 376 (1987), Blackmun, J., concurring).

With regard to the inventory search of a vehicle, the BTPD directive provides:

> *When in the course of conducting an inspection and inventory of a motor vehicle, an officer discovers any evidence of a crime and/or other instruments of illegality and, at that point there is sufficient probable cause to believe a crime has been committed and that further evidence or fruits thereof may be found in the motor vehicle, the officer must stop the inventory and contact, as soon as practicable, the duty or on call Assistant District Attorney to discuss securing a search warrant. Otherwise, the officer will continue the inspection and inventory of the motor vehicle as set forth within this General Order.*

Although the exact nature of when and how the search was conducted and when the evidence was seized cannot be specifically gleaned from the BTPD reports, there is reason to believe that the Government will not be able to meet its burden of proving that

7

BTPD followed it's own protocol with regard to the Inventory search of Defendant's vehicle and therefore the evidence seized from inventory search must be suppressed.

## III.    CONCLUSION

For all the foregoing reasons, there was no probable cause for the warrantless arrest of Defendant and therefore all fruits of Defendant's arrest must be suppressed.


**LAW OFFICE OF MARGARET M. GRASSO**


**BY:** *Margaret M. Grasso*

**MARGARET M. GRASSO, ESQUIRE**
**Attorney for Defendant James Williams**


August 8, 2018

## <u>CERTIFICATE OF SERVICE</u>

I, Margaret M. Grasso, Esquire, certify that I have delivered a copy of Defendant's Reply to the Government's Response to Defendant's Motion To Suppress to Assistant United States Attorney, Timothy Stengel, Esquire and by electronic mail.


**LAW OFFICE OF MARGARET M. GRASSO**


**BY:** _____

**MARGARET M. GRASSO, ESQUIRE**
**Attorney for Defendant**


August 8, 2018


9