IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES WILLIAMS | : | No. 17-645-1 |

**MEMORANDUM**

PRATTER, J.                                                                                         MAY 25, 2021

Mr. Williams objects to the Court's acceptance of the Probation Office's Presentence Investigation Report ("PSR"), which applied a career offender enhancement as part of the guideline calculation for him. This enhancement was based on Mr. Williams' two prior drug trafficking convictions. Mr. Williams argues that this enhancement was improper because the underlying statute under which he was convicted does not fall within the Sentencing Guidelines' definition of a "controlled substance offense." The Third Circuit Court of Appeals previously considered this exact question, and held that violations of Pennsylvania's drug trafficking statute are controlled substance offenses. *See United States v. Glass*, 904 F.3d 319, 321-24 (3d Cir. 2018). But Mr. Williams argues that a more recent Third Circuit Court of Appeals case overturned *Glass*. *See United States v. Nasir*, 982 F.3d 144, 156-60 (3d Cir. 2020) (en banc). For the reasons that follow, the Court holds that the career offender enhancement is properly applicable to Mr. Williams.

### BACKGROUND

On April 12, 2019, following a four-day jury trial, Mr. Williams was convicted of one count of distribution of heroin, one count of aiding and abetting, one count of possession of cocaine base with intent to distribute, and one count of possession of a firearm by a felon.

The evidence at trial established the following facts. Mr. Williams and his co-defendant, A.J., met around March 2017. A.J. was already involved in drug trafficking at this time. But around March 2017, Mr. Williams and A.J. began a romantic relationship, and Mr. Williams began supplying heroin for her to sell. The pair split the profits.

On July 18, 2017, A.J. offered to sell a man approximately $700 worth of heroin and crack cocaine. Unbeknownst to her, this "customer" was a confidential informant who was working with the Bensalem Township Police Department. After receiving the informant's order, Mr. Williams put the heroin and crack cocaine in his car glove compartment where he also stored a loaded pistol.

The couple then drove to the agreed-upon location for the drug deal, and brought A.J.'s eight-year-old son with them. When they arrived, they circled the parking lot and then parked. The confidential informant walked to the car and got inside, sitting next to A.J.'s son. He told Mr. Williams and A.J. that he had only $200 for heroin. Mr. Williams gave the confidential informant 28 packets of heroin and took the informant's money. The informant got out of the car and signaled to police officers who were waiting nearby. The officers arrested Mr. Williams and A.J.

Police recovered the $200 the informant gave Mr. Williams, 42 bags of heroin in the glovebox, 54 bags of heroin in the trunk, one clear plastic bag containing approximately 1.56 grams of crack cocaine, a firearm in the glove compartment loaded with nine rounds of ammunition, three oxycodone pills, three bags of marijuana, one grinder, and a digital scale.

## Discussion

Mr. Williams argues that his prior convictions for drug trafficking do not qualify as career offender predicate offenses under the Federal Sentencing Guidelines. For that reason, he objects to the Probation Office's Presentence Investigation Report's ("PSR") and the Court's classification

of him as a career offender. He argues that his prior convictions under 50 Pa. Stat. § 780-113(a)(30) do not qualify because the statute covers conduct outside of the sentencing guidelines' definition of a "controlled substance offense."

"Career offender" enhancements apply if a defendant has two prior "controlled substance offense" convictions. U.S.S.G. § 4B1.1(a). To determine whether a violation of a state statute is a controlled substance offense, courts apply the "categorical approach." *See United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018). Under this approach, a court considers only the elements of the state statute in question, not the facts behind the defendant's actual misconduct. *See Taylor v. United States*, 495 U.S. 575, 600-02 (1990); *Williams*, 898 F.3d at 323. The court then compares the elements of the state statute with the elements of a "controlled substance offense," as defined in the sentencing guidelines. *See Taylor*, 495 U.S. at 600-02. If the state statute criminalizes a broader range of conduct than the sentencing guidelines, there is no match, and a conviction under that statute will not qualify as a career offender predicate offense. *See id.* But if the range of conduct the state statute criminalizes is the same or less than that implicated by the sentencing guidelines, the defendants' prior conviction is a career offender predicate. *See id.*

The Third Circuit Court of Appeals has already considered the exact question Mr. Williams poses, and held that violations of Pennsylvania's § 780-113(a)(30) are controlled substance offenses. *See United States v. Glass*, 904 F.3d 319, 321-24 (3d Cir. 2018). But Mr. Williams argues that *Glass* is no longer good law because of the appellate court's more recent opinion in *Nasir*. *Nasir*, 982 F.3d at 156-60. Mr. Williams' argument is not frivolous. *Nasir* discussed *Glass* unfavorably, and overturned *United States v. Hightower*, 25 F.3d 182 (3d Cir. 1994). Because *Glass* had relied on *Hightower*'s reasoning (though it does not actually cite *Hightower*), and *Nasir* overruled *Hightower*, *Glass*'s continued validity is now in question.

3

However, upon close review *Glass* is still valid, notwithstanding *Nasir*. To understand why, it is necessary to review *Glass*'s reasoning. Although the relevant section of the *Glass* opinion is short, it advances two rationales for its conclusion that convictions under § 780-113(a)(30) are controlled substance offenses. The first rationale is based on deference to the Sentencing Commission's "application note," which interpreted the sentencing guidelines to include "inchoate offenses" such as attempts. *Glass*, 904 F.3d at 322-23. The second rationale does not rely on the application note, but instead focuses on the similarity of the terms used in the sentencing guidelines and in § 780-113(a)(30). *See id.* at 322. For violations of § 780-113(a)(30) to qualify as career offender predicates, only one of these two rationales must be true. If the application note is a valid interpretation of the sentencing guidelines, then "controlled substance offenses" include inchoate crimes. If this is true, then § 780-113(a)(30) does not cover more conduct than the sentencing guidelines, whether or not it includes an inchoate offense. And even if the application note is invalid, under the categorical approach, if the sentencing guidelines and § 780-113(a)(30) are substantively identical, then § 780-113(a)(30) convictions count as career offender predicates.

When *Nasir* overruled *Hightower*, it foreclosed only the first rationale—holding that the application note's interpretation was invalid, and that as a result, the sentencing guidelines do not include inchoate offenses. The court in *Hightower* had previously ruled that the application note in question *was* a valid agency interpretation of its own legislative rule. *See Hightower*, 25 F.3d at 184 (quoting U.S.S.G. § 4B1.2, cmt. n.1). As a result, while the definition of controlled substance offense included only "completed offenses" (e.g. "manufacture of a controlled substance" or "distribution of a controlled substance"), *Hightower* held that the application note

4

broadened the definition to also include "inchoate offenses" (e.g. "*attempted* distribution of a controlled substance" or "*aiding and abetting* distribution of a controlled substance").

*Nasir* overturned *Hightower* because the court found that the application note was in fact inconsistent with the sentencing guidelines. It noted that "the guideline does not even mention inchoate offenses," and "[t]hat alone indicates it does not include them." 982 F.3d at 159. Therefore, the court held that the application note was not a valid interpretation, meaning that inchoate crimes do not qualify as "controlled substance offenses." *See id.* at 157-60.

However, *Nasir* did not consider—much less overrule—the second rationale. There are two sub-arguments contained within the second rationale: first, that § 780-113(a)(30) does not include an inchoate offense; and second, that § 780-113(a)(30)'s definition of "delivery" and the sentencing guideline's definition of "distribution" are substantively identical. Both sub-arguments reach the same conclusion: even if "controlled substance offenses" do not include inchoate offenses, § 780-113(a)(30) does not cover more conduct than the sentencing guidelines do.

First, § 780-113(a)(30) does not include an inchoate offense. Indeed, § 780-113(a)(30) never uses the word "attempt." It prohibits the "manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance." Though the statute never uses the word "attempt," the word "deliver" is elsewhere defined as "the actual, constructive, or *attempted* transfer from one person to another." 35 Pa. Stat. § 780-102(b) (emphasis added). Mr. Williams thus argues that although both the sentencing guidelines and § 780-113(a)(30) cover "delivery" of a controlled substance, Pennsylvania law defines "delivery" to include "attempted transfer," and, because of that, § 780-113(a)(30) is rendered an inchoate offense.

As intricate as it is, Mr. Williams' argument overlooks "a technical, but important, difference between completed offenses and attempted offenses." *United States v. Havis*, 929 F.3d

317, 319 (6th Cir. 2019) (en banc) (Sutton, J., concurring). An "attempted" offense, in the technical, legal term of art sense, requires "[a]n overt act that is done with the intent to commit a crime but that falls short of completing the crime." *Attempt*, Black's Law Dictionary (11th ed. 2019). *See also United States v. Williams*, 553 U.S. 285, 300 (2008) (noting that inchoate crimes involve "acts looking towards the commission of another crime"). "Someone may thus commit the offense of distributing drugs by attempting to transfer drugs. But that does not make the crime of conviction under [the statute] an *attempted* distribution." *Havis*, 929 F.3d at 319 (emphasis in original). Rather, an attempted transfer qualifies as a *completed* offense of distribution, not merely an attempt to commit the crime of distribution. Said another way, a completed offense does not become an inchoate offense merely because the word "attempt" appears in the definition of a term somewhere in the statute.

Second, § 780-113(a)(30)'s language is substantively identical to the sentencing guidelines' definition of controlled substance offenses. *Compare* § 780-113(a)(30) ("*delivery* . . . [of] a controlled substance" (emphasis added)) *with* U.S.S.G. § 4B1.2(1)(b) ("*distribution* . . . of a controlled substance." (emphasis added)). There is no "daylight" between the federal term "distribute" and the Pennsylvania term "deliver." *See United States v. Garth*, 965 F.3d 493, 497-98 (6th Cir. 2020) ("Is there any daylight between Tennessee possession with intent to deliver and federal possession with intent to distribute, the crime listed in the guidelines? We think not. Both criminalize the same conduct . . . ."). Indeed, the federal Controlled Substances Act confirms this point explicitly: "[t]he term 'distribute' means to deliver." 21 U.S.C. § 802(11). And the federal and state definitions of "deliver" are likewise identical. *Compare* 21 U.S.C. § 802(8) ("The terms 'deliver' or 'delivery' mean the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship.") *with* 35 Pa. Stat. § 780-

102 ("'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship.").[1] Any minute differences between Pennsylvania's definition and the federal definition are immaterial because the statutes criminalize the same conduct. *See Garth*, 965 F.3d at 496 ("We're not looking for a literal match, anyway. . . . Any mere 'lexical differences' between Tennessee law and federal law are immaterial." (quoting *United States v. Douglas*, 563 F. App'x 371, 377 (6th Cir. 2014)).

The court's opinion in *Glass* relied on much the same reasoning as *Garth* to reach its holding, noting the similarity between the Pennsylvania and federal definitions of "delivery." *See Glass*, 904 F.3d at 322 ("[T]he federal counterpart to [§ 780-102(b)], the Controlled Substances Act (CSA), also defines the 'delivery' of a controlled substance to mean 'the actual, constructive, or attempted transfer of a controlled substance.'"). *Nasir* did not foreclose this line of reasoning, because the focus of the opinion was entirely on whether the application note was a valid interpretation of the sentencing guidelines. It is true that *Nasir* stated in passing that § 780-113(a)(30) was an "'attempt' statute." *Nasir*, 980 F.3d at 158. But this language was used only in the opinion's historical background section—it is certainly not a ruling on the meaning of § 780-113(a)(30). Therefore, *Glass* remains good law, and this Court must follow it.

However, as stated during the sentencing hearing, this enhancement—or the lack of it— did not or would not control the sentence actually imposed.

---

[1] Mr. Williams concedes that § 802(8) defines "deliver" "exactly like it is in Pennsylvania," but asserts that "this definition is off limits when it comes to analyzing whether a Pennsylvania delivery matches with a federal distribution." But Mr. Williams gives no argument why the Court cannot consider these definitions. Indeed, courts regularly do so in determining whether a conviction counts as a career offender predicate. *See United States v. Chapman*, 866 F.3d 129, 135 (3d Cir. 2017); *United States v. Lewis*, 720 F. App'x 111, 117 (3d Cir. 2018).

## CONCLUSION

For the foregoing reasons, the Court rejects Mr. Williams' objection to the conclusion that he qualifies as a career offender. An appropriate order follows.

BY THE COURT:

_/s/ Gene E.K. Pratter_
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE